Good morning. May it please the court. My name is Kim Spear. I represent CHP officer John Marsh. I would like to reserve three minutes of time for rebuttal, please. Thank you. Officer Marsh should be granted qualified immunity in this case. Because at the time of this incident, there was not case law that clearly established that his actions would the material facts in this case are undisputed. And the district court erred by taking facts of questionable materiality at best and extrapolating, in essence, speculating that a jury could use those or could look at that evidence and come to a conclusion that might affect that Officer Marsh wasn't telling what really happened. So Officer Marsh says that the decedent reached for something that looked like he was reaching for a gun. Right. And that's the point that the district court thought was debatable and might be an open question factually. So when you say that it wasn't clearly established law, that the conduct was impermissible, are you assuming that there was a reach? Like, if we assume there was no reach, then do you think that it's still okay that the decedent was shot? Let me answer it this way. The scenario that the district court viewed was the relevant one to look at was the one before the shot was fired. When Mr. Anderson had stopped trying to free the car by rocking it forwards and backwards, and he had one or two hands on the wheel, and that sliver of time the court held was, showed that Mr. Anderson was not a threat. And the point to Well, I think as I understood it, the point was, if he didn't reach for a gun, he wasn't a threat. Correct. So doesn't it all turn on whether or not he reached for a gun or reached for something that looked like he might have been reaching for a gun? It turns on whether he, Officer Marsh, reasonably perceived that he was making a threatening movement, which in this case was his hands disappeared and he turned away. But if the jury did not believe that the hands ever moved, then was it okay for Officer Marsh to shoot? No. And that was clearly established, right? It was clearly established that he would not have been a threat. And yes. So we do have a factual dispute then. I guess now you're going to argue we don't really have a factual dispute. But your argument that the law wasn't clearly established really turns on your factual dispute question, as I understand it. Well, there is no factual dispute about the events that occurred in the car, Mr. Anderson's movement in the car. There is no evidence that either directly or circumstantially opposes what Officer Marsh testified happened. Well, why not the testimony that he said he shot because he thought he was going to be run over by the car instead of saying he shot because the guy reached for a gun? Because he ran into my car. Testimony comes from an erroneous transcript of the dispatch recording. You hear on the tape, which is in the record, you hear Officer Marsh's shots fired and then there is something inaudible and you hear my car. And the reason that doesn't rise to the level of raising an implication that he said something else about the reason is the reason for shooting is first. We don't know what was said in that. The woman who prepared the transcript admits that she doesn't hear it. She doesn't know why the transcript was written the way it was at the time. No one else hears it. Officer Marsh doesn't hear it. There is. So the transcript itself is the only source of that alleged fact. And it has a great indicia of invalidity because that information that's in the transcript is not on the tape. When was the first time that Officer Marsh says, I shot him because I saw him reaching for something that I thought was a gun? Officer Marsh says he told that to Sergeant Haller at the scene. And do we have a testimony from the recipient of that, that he did? Officer no. Sergeant Haller says he thinks they, that he doesn't recall what Officer Marsh said about why he shot. But that's not true. He says he believes he remembers Officer Marsh saying something about that he thought the Camry was trying to run him over. That is, that is not, if I may write. That's in his deposition at ER-206. What he says is he did not, that's the only thing he recalls. If you look at the transcript, that is, Sergeant Haller is saying that it's the only thing that he recalls Officer Marsh saying. He does not say that that was what Officer Marsh described as the reason for firing the shot. It was just the only thing that, in the events as they went by, that he recalls. So, so, but there's nothing he says that Officer Marsh at the time says he was reaching for something? No, that is not in Sergeant Haller. No, it's not. Would it be an impermissible conclusion based upon the evidence for a jury to conclude that Officer Marsh is lying? Yes. Why? I mean, it seems to me that this is an explanation that is, of course, advantageous to Officer Marsh, and it comes rather late. And I think the jury would be permitted to disbelieve him when he says, I told it to Officer Hamilton, when Hamilton himself says, I don't remember him saying that. The events that happen after there's an incident such as this is that the officer is instructed to not discuss with anyone. He's removed from the scene fairly quickly, which is what happened here. Well, he got to look at the tape. When he was, first he was removed from the scene, taken back to the office. When he met with the investigators from the Fresno Police Department, not from CHP, Fresno PD was the one who had found the witness across the street, had found the video from air transmission. He did, Officer Marsh was not asking to see something just so he could cook up a story. He did not know that there was no M-Bars. He didn't know about that his M-Bars wasn't working. The camera, is that what you're saying? Excuse me, the dash cam. They don't have body cams. The dash, he didn't know the dash cam was not working. Well, that's also only if we believe him, right? I mean, if he turned it off, he knew it wasn't running. There is no evidence he turned it off. Well, it wasn't on. It was not on. And that was, that was an idiosyncratic thing that just happened because the car had been turned off while Officer Marsh had stopped by Metro Uniform to drop off a uniform for adjustment. And when Officer Marsh got back in the car, he didn't know that the M-Bars hadn't just automatically booted up. But the only person who can tell us that is him. That's not correct. Officer Perez was deposed as the person who was most knowledgeable about the operation of the M-Bars system. And there's no record that... And what did he say that was most on point for this point? Can you point us to it? I believe he testified that there would be, there was no electronic signature that something had been turned off. There's no evidence that anyone after the fact went off and went over and messed with the M-Bar system. When the M-Bars boots up, it will record a period of time before an incident, of course. And there was no example of the M-Bars being turned off, suddenly stopping in midstream. And the whole M-Bars theory would require Officer Marsh to have known ahead of time that he was going to be involved in something he didn't want to have reviewed. And he would turn it off ahead of time. There is no evidence of that. That is complete speculation on Plaintiff's part, because there is no evidence that contradicts what Officer Marsh says happened in this instance. All of the circumstantial evidence supports Officer Marsh's statement. All of the video supports Officer Marsh's testimony, as even the district court had to acknowledge. The only way that Plaintiff is able to bring in this, the evidence, if you will, that requires speculation on the part of the jury is if the court, in an effort to try to find some way around the very direct and plain undisputed facts, is just hunting for something that a jury could look at. And there is, speculation is not a basis for this case to go to a jury. There has to be some affirmative evidence of a fact that will bring Officer Marsh's testimony into dispute. There are two reasons why the court should not have been searching for something that brings into, that rolls into speculation first. The case law says that the court looks, when the subject is unavailable, usually because they've been killed in the incident, the court can look at the surrounding circumstances of the incident to see if they are consistent with what the officer testified to. And in this case, Mr. Anderson was not killed at the scene. He was alive. He, at any time in nearly three years, could have offered someone a version of the events. Well, at any time, the CHP could have asked him. Nobody from your side, I'll say generally your side, asked him, right? I mean, you could have asked him directly. Did you have a gun? Were you reaching for a gun? Nobody asked him. During the investigation, Fresno PD did attempt to speak with him, and we did depose members of his family, his mother, his wife. Did he tell you anything? And no one had information to give. But I mean, in the immediate aftermath of the incident, when you were investigating Officer Marsh's behavior, and there was an investigation, there always is, did anybody on your side of the case at that point ask Mr. Anderson, were you reaching for a gun? I'm not sure, frankly. You don't know whether he was asked or not? Was he interviewed? He was interviewed by Fresno PD. And what was that? As part of their investigation. And what did he say? He said he didn't recall. Now, is that in the record and where? The complete interview by the investigation report from Fresno PD is in the record, I believe the other report. The investigation report from Fresno is in the record at 220. So Anderson said he didn't recall when asked, but no gun was found, obviously. Correct. No gun was found. But and he said he didn't recall. I think I better read that transcript to see precisely what the question is that was asked. Correct. And I'm not sure that is in the transcript. Well, yeah, I'm not sure we even have a transcript. It looks like a very short, like one page. It's not. I'm sorry. No, I'm just trying to look at ER 220. And at least on quick glance, it's certainly not a transcript. No, I think that's that was the reference was for the F the Fresno PD investigation report. There is Mr Anderson was not deposed. That's the question. So we have no transcript of anything for Mr Anderson at the time of the initial investigation. And of course, he wasn't deposed in connection with this case because by the time that might have happened, he had died. Correct. And but he had opportunity to respond to written discovery and did not come forward with any written discovery responses. Was he asked in the written discovery? He was asked for his for. Yes, I believe so. Again, that, though, is not in the record, but he didn't come forward with anything from his written discovery that could have have gone to this point about what happened inside the car. But there's no there was no discovery violation. I mean, it's not like you have a claim that you asked him a lot of questions and he wouldn't answer. It happens that the case hadn't proceeded far enough by the time he died. But I don't understand. It seems like you're asking for, like, a discovery sanction. But there was no misconduct, was there? No, no, no. That's that's not what we're saying. And it's not that would not be our point. Our point is that he was alive. He could have he had nearly three years between the time that this incident happened and when he died of his meth overdose that he could have given a statement of wouldn't even have to be be, you know, notarized. He could have given his version of events. He was always available to contradict what Officer Marsh said. And Officer Marsh Marsh's position has been clear from the very start of the incident. It's not just when the case was filed that this came out from the time of the incident. And Mr. Anderson was alive. Mr. Anderson could have provided evidence to contradict what Officer Marsh said, and that did not occur. Therefore, under the technical reading of the rule in Cruz or Scott versus Henrich, there was no reason for the court to be checking with all the other all the other sources of information. But even when they do, the all of the surrounding information on this incident supports what Officer probably want to reserve some time. We've totally defeated you in that effort. We'll hear from the other side. But we'll then give you a chance. Thank you. You're right. Good morning, Your Honors. May it please the court. I'm Adam Carlson. I represent the estate of Wayne Anderson and the question really for the court is whether or not the law was clearly established at the time. And the law was clearly established at the time of the incident that an officer cannot shoot someone unless there is probable cause to believe that the suspect poses a significant threat of death or serious bodily injury. Essentially, the inquiry boils down to the simple question of have we presented sufficient evidence that a reasonable jury could conclude Anderson did not make a sudden furtive gesture? They concede that that's the question for the court with the questioning by the court this morning. And the facts that the law is clear, what may or may not be clear is what actually happened, right? Yeah, it's a question of fact for the jury. The law is clear. So your argument is there's enough evidence here from which a jury can conclude that Mr Anderson did not make a motion that looked as though he was reaching for a gun. That's correct. And so help me out. Why is there enough evidence for that? The other side says there's not enough. Well, I'd like to go through the facts if I may, because that's obviously important. We have a police pursuit that lasted less than a minute. And then Mr Anderson's vehicle comes to a stop. It's undisputed. They concede vehicle came to stop vehicle. Did the vehicle when the police got there, was the vehicle untangled from the fence or was it there for it was disabled on the fence. And actually, there's videos that have been submitted. There are officers that respond to the scene and Sergeant Haller. I believe Officer Haller, who responds and parks his vehicle to the back right of Marsh's vehicle and the Camry and his dash cam was recording. And so you can see, to answer your question directly, the Camry was still lodged on the fence. And the evidence is that it was disabled on the fence. The front two tires had blown out on incapable being moved. And the evidence is that had come to a complete stop before the interaction that we're really here to talk about. And what we're talking about is Officer Marsh being the only evidence that there was this movement and his conduct and statements on the scene are different. After he gets an opportunity to review videos, it's the first time we're hearing this new version and it's inconsistent with not only his statements, but his conduct on the scene. And we find several facts to be particularly compelling when evaluating Officer Marsh and whether or not he's credible when he states that he believed that the individual in the car possessed a gun. He has his fellow officers arriving on the scene going up to this vehicle to detain this individual and he doesn't warn them that there's a gun in the car. A reasonable jury could believe that Officer Marsh at the time, this is after the shooting, doesn't harbor the belief that he was, that there was a weapon in there, that there was a gun. And we find that to be particularly compelling. And then we're talking about inconsistent statements and we have direct and circumstantial evidence of Officer Marsh's other reasons why he shot him. He gives a statement that was recorded by CHP dispatch that he ran into my car. And I wanna point out that that was not a transcript prepared by the plaintiff's side. This is a CHP dispatcher who's been trained in years of creating these transcripts, not a plaintiff presented evidence. The audio is, shots fired, he ran into my car. And a reasonable jury could believe that he's making that statement because the only other statement attributed to him on the scene about why he shot him is with Sergeant Haller. And Sergeant Haller saying, well, he told me that he thought he was gonna get run over by the car. And so we have all this mention about a car. And now later after, as we've gone over, he's got an opportunity to look at the surveillance video, which is certainly, was unique as conceded by the expert who was the post on these issues. He hadn't heard of this happening before. We can present to a jury reasons why Officer Marsh is not credible. And we're talking about a question of fact. They concede that the law is clear. He's not entitled to qualified immunity unless there is this reach for a weapon, which would present a credible threat. There's also the fact that Officer Marsh's testimony is evolving. Where he states, Mr. Anderson reached in the vehicle. First, it's in between the driver's seat and the console. At deposition, it's on the passenger floorboard and on the other side of the vehicle. It's an evolving story over time. And this all comes down to the credibility of Officer Marsh and whether or not a jury would disbelieve his statement that Mr. Anderson reached for a weapon. And of course, we have the fact that Mr. Anderson was unarmed, and that makes it less likely... Excuse me, that makes it more likely that he did not make that sudden furtive gesture. So the evidence really is quite compelling that we will be able to put forth to a jury and a reasonable jury could conclude under those facts that I've gone over that Mr. Anderson did not make a sudden furtive gesture. What about this issue about whether anyone ever asked him if he knew that he kept his hands on the wheel or had done something with his hands? Well, to answer that question, the evidence before the court doesn't really have an indication of an interview of Mr. Anderson. I have a recollection of some other statements that were attributed to him that are not before the court, but I do recall Mr. Anderson being attributed the statement of, why did you shoot me? And I think that even if there is... Whether or not there is a statement doesn't mean that you get to disregard circumstantial evidence over here just because we don't have this evidence over here. It's just about whether or not the plaintiff has sufficient evidence, whether direct or circumstantial, about this issue. So I think it's a moot issue that they're trying to raise to say that this case is distinguishable from others where the individual died, but we have cases going back to 2001, US versus Ting, where in this court, where the individual survived, but he doesn't recall. And so... I'm trying to understand a piece of your answer. It sounded to me as though you're telling me that we have the record and what either is or is not on the record, but that there are some statements not on the record made by Mr. Anderson. Is that what you're saying? I can't say that. What I can say to the court is the evidence before the court does not address whether or not he made statements. That's what I can represent to the court. I thought you said, maybe you want to tell me you didn't say that, but I thought you were saying that there were some statements of which you are aware, but they're not in the record. That's... I'll withdraw that statement. It's my recollection. I don't have a... Because it wasn't in the record preparing for this, I can't state affirmatively one way or the other what statements were attributed. In any event, of course, we're limited to what's in the record, right? Correct. And I apologize if that was misleading. Was he still alive when the complaint was filed? Yes. Okay. So should we be troubled by the fact that in... I think the key paragraph is probably paragraph 10 on ER 458, where it says, when plaintiff did not immediately comply with defendant Marsh's alleged commands, defendant Marsh fired two shots at plaintiff. One bullet lodged in the doorframe of plaintiff's car, the other entered plaintiff's upper left arm and lodged near his spine. I mean, should we be worried that that paragraph doesn't say when I did not immediately comply and kept my hands on the wheel? I don't think that's a concern for the court. The court... The question for the court is whether or not there is sufficient evidence that a reasonable jury could conclude Anderson did not make a sudden furtive gesture, and it's weighing... We're getting to a question of fact, and whether or not he could have not remembered because he was shot. And under U.S. versus Ting in the 9th Circuit, 1991, excuse me, it goes back even that far, the individual suffered from amnesia and did not recall being shot, and the plaintiff, which was his wife, presented evidence from which a jury could reasonably conclude that he was shot at close range while in a prone position on his hands and knees. There was other circumstantial evidence. We have the individual not recalling being shot. You can assume that that's the statement of Mr. Anderson. It doesn't matter. It doesn't matter what he says. What happened, because we don't have that evidence. But if he said, I do remember that I all of a sudden wanted to grab for my phone, that would be relevant, right? Well, we don't have that evidence, so that's not before the court. But I mean, it is possible he could have made a statement that would be relevant. He just didn't. That's true. That's fair. I was overstating. I think the court should just... The question is really whether or not there's sufficient evidence. And the fact that, as the courts have pointed out, you know, they could have interviewed him. They could have asked him questions about why did... They could have tried to get him to admit that he did make a furtive gesture. They had those tools at their disposal to try and find out what happened on the scene. But I think that that partly goes to this notion that Officer Marsh's conduct on the scene is not conveying to these responding officers that that's what they're looking for. So I think that the fact that they're not even investigating that is further circumstantial evidence that Officer Marsh didn't believe that and isn't conveying that to fellow officers about what's being investigated. I mean, that would be a serious crime if someone had a felony. It could be a crime if there was a gun in a car. Officer Marsh isn't conveying that on the scene. His conduct is completely inconsistent with harboring the belief that there was a reach for a weapon. And unless the court has any other questions. Okay. Thank you. Would you put two minutes on the clock, please? Thank you. Just to correct a few of the misstatements. First, there is evidence of Mr. Anderson making a movement in the car. In this sense, the AR transmission video shows Officer Marsh with his position, as he said, behind a little behind the B pillar on the car. And he is maintaining that position going back and forth as the car is moving forward to back as Mr. Anderson is trying to free it from the fence. And then when the car starts to come forward a third time and it stops, and that is the point at which Officer Marsh said he saw Mr. Anderson make some gesture. And that's what he fired. We do not see the gesture in the video, but what we do see is Officer Marsh holding his fire. The time that the car is going forward to back as Mr. Anderson is trying to free it from the fence. And when Mr. Anderson cannot do that, that is the point at which you know that something different has happened in the video, because that is the point at which the shot fire is fired. You can't quite tell from the video when it happens, but the point is that Officer Marsh was holding his fire and there had to, it is a reasonable conclusion to reach that something happened that was different. And that was threatening because all the time that he's near near to the car before then he has not fired. And why did he fire? Because he saw something different. If all he saw was someone who was stopping with his hands on the wheel saying, okay, you got me, you would not have fired. It is a reasonable conclusion to bring that because Officer Marsh held his fire until a particular point that something different happened there. And that supports Officer Marsh's testimony, the business of the car being disabled. There is no evidence that Officer Marsh was aware of that. In fact, everything he saw, the car was moving forwards and backwards. And so he is not a case of the car being immobilized. And there is also no policy that CHP has that an officer cannot look at a video or that it is somehow improper to view MVARS or some other video evidence from an incident. That was something that Fresno PD did. And there was no policy for it, no policy against it. Therefore nothing can be inferred from that. Okay. Thank you. Thank you. Thank, thank you very much. Thank both sides for their argument. The state of Wayne Steven Anderson versus Marsh submitted.
judges: W. Fletcher, Friedland, Hillman